[No. C013313. Third Dist. Jan. 14, 1993.]

CAL-STATE BUSINESS PRODUCTS & SERVICES, INC., Plaintiff and Appellant, v.
RICOH et al., Defendants and Respondents.

**COUNSEL**

Katz & Bierer, Joel D. Bierer and Richard L. Katz for Plaintiff and Appellant.

Steinhart & Falconer, James T. Fousekis, Matthew S. Covington and Nancy J. Newman for Defendants and Respondents.

**OPINION**

**DAVIS, J.—**

### INTRODUCTION

As we explain more fully in the course of this opinion, Code of Civil Procedure sections 410.30 and 418.10 (undesignated section references will be to this code) are the means by which a defendant may challenge a plaintiff's selection of California as the forum for the litigation between them. Two substantive bodies of law are affected by this procedural vehicle: the traditional (or noncontractual) doctrine of forum non conveniens and the enforceability of contractual forum-selection clauses. In light of the fact the appellant has fused aspects of these related but disinct areas, we are called upon to delineate the relevant criteria of each, to explain that this is not the proper context for application of traditional forum non conveniens principles, and to determine that a contractual forum-selection clause put in issue by the case before us is enforceable.

In response to the complaint filed by plaintiff Cal-State Business Products & Services, Inc. (Cal-State), defendant "Ricoh"[1] moved for an order staying or dismissing this action as being brought in an inconvenient forum. (§§ 410.30, 418.10.) The basis of the motion is forum-selection clauses contained in contracts between Ricoh and Cal-State which designate New York as the proper forum for any litigation connected with the contracts. The trial court ruled the action was "best decided" in New York and issued a stay pending the resolution of a suit brought by Ricoh in a New York federal court. We shall affirm.[2]

BACKGROUND

Both parties filed declarations and exhibits in the trial court in connection with the motion. We draw our facts from these sources.

John Fisher is the president, director, and principal shareholder of Cal-State. He has extensive knowledge of the business practices in the office machine industry based on 22 years of experience in the field. He has a great deal of familiarity with the operations of Ricoh in particular, having been one of its dealers from 1981 to 1983 and its director of dealer sales for the western United States from 1987 to 1988. His primary responsibility in the latter position was negotiating and authorizing hundreds of new dealer contracts, and he had input in the wording of the contracts. As he stated to Ricoh in a 1990 letter, "I am extremely familiar with the Ricoh dealer contract."

According to Mr. Fisher, Ricoh offers two product lines, office machines (i.e., photocopiers) and facsimile machines (fax) and assigns specific territories to dealers. In contracting with dealers, Ricoh executes separate contracts for each product line in a territory. Mr. Fisher also asserted Ricoh had

[1] The complaint names "Ricoh, Ricoh Corporation, Ricoh Communication Products, Ricoh Communication Products, Inc., Simon Sasaki, California Copy, Inc., Gene Miller, [and] Joyce Miller" as defendants. There are no such corporate entities as "Ricoh," "Ricoh Communication Products," or "Ricoh Communication Products, Inc." The trial court, nonetheless, refused a request to strike these misnomers from the complaint, thus we have retained them in the caption. We shall generally use the fictional entity "Ricoh" as the collective name for the defendants.

[2] In response to our notification that this court had completed its review of this appeal and was prepared to render a decision, we received notification that Ricoh and Cal-State had settled the underlying dispute. There followed a flurry of correspondence and filings from both sides regarding the proper disposition of the appeal. We will not sort the matter out for the parties. Since Cal-State, the appellant, maintains it will not dismiss its appeal, we have an obligation to review the trial court's order. To the extent this determination is moot as to certain respondents, so be it; the overall analysis of the propriety of the trial court's stay is not altered by their presence or absence.

an informal practice of granting de facto "exclusive" dealerships for "preferred" dealers in certain territories, which was accomplished by refusing to renew the contracts of other dealerships in the territory as they expired.

After Mr. Fisher left Ricoh, he founded Cal-State in December 1989. Although it is disputed who initially solicited whom, he filed a dealership application for the Stockton branch of his business in February 1990. He claimed he did so only because he was promised by various Ricoh representatives that he would ultimately be given a dealership in Sacramento and an exclusive dealership in Stockton upon the expiration of another dealer's contract. In any event, he signed standard contracts for both product lines for a several-county territory (generally referred to as the Stockton territory) on March 7, 1990, which expired June 30, 1990. The contracts contained identical integration[3] and choice-of-law/forum clauses[4] among the "GENERAL PROVISIONS." The contracts explicitly noted the territory was not exclusive. Jim Ivy, Ricoh's senior vice-president of marketing, approved and signed the contracts at the corporate headquarters in New Jersey on March 22.

In August 1990, a Ricoh manager sent Mr. Fisher a letter reminding him that "with the upcoming authorization of Cal-State in Sacramento on October 1st, it is important you have the proper inventory to support that marketplace." Mr. Fisher ordered "a large amount of [Ricoh] machines on credit."

Subsequently, Messrs. Fisher and Ivy executed contracts for fax dealerships in the Stockton *and* Sacramento territories (the latter also embracing several counties from Solano to the foothills) and an office machine dealership in the Stockton territory. These were to be in effect until March 31, 1992. Again, both contracts expressly noted the territories were nonexclusive. Both contracts contained integration[5] and choice-of-law/forum

---

[3] "19.3 This Agreement is intended to be a final expression, and a complete and exclusive statement regarding the subject matter of this Agreement and supersedes any prior oral statements or agreements between the parties."

[4] "19.1 Dealer and Ricoh agree that this Agreement, and all documents issued in connection therewith, shall be governed by and interpreted in accordance with the laws of the State of New York. . . . [A]ny appropriate state or federal district court located in the Borough of Manhattan, New York City, New York shall have exclusive jurisdiction over any case of controversy arising under or in connection with this Agreement . . . ."

[5] "17.3 This Agreement is intended to be a final expression, and a complete and exclusive statement regarding the subject matter of this Agreement and supersedes any prior oral statements or written agreements between the parties."

clauses[6] identical to the previous contracts. Mr. Fisher signed them in California in October 1990, and Mr. Ivy signed in New Jersey in November 1990.

In late October 1990, Mr. Fisher received a letter from the Ricoh manager assuring him "You are correct that you were promised to be authorized in Sacramento for both copiers and facsimile units no later than October 1st. However, since you worked for Ricoh you understand that we must give a dealer written notification before authorizing another dealer in their territory. We are now going through that process. [¶] Please be patient. Now that you are authorized for fax [y]ou can spend the next two months getting a fast start with that product line. I have been assured by [other Ricoh executives] there will be no problems getting you authorized on January 1, 1991." He received a similar letter from defendant Sasaki dated November 30, 1990, stating "we need some more time to determine the application [*sic*] of adding another copier dealer in this territory because of our committment [*sic*] to the other party."

It is not exactly clear what specifically took place over the course of the next year. Mr. Fisher simply points out he never received an office machine dealership in the Sacramento territory or an exclusive dealership in the Stockton territory. Mr. Ivy states only that Mr. Fisher did not pay for the machines he received on credit and currently owes $477,000 (rounded). In any event, Cal-State filed its original complaint against Ricoh in September 1991 in Sacramento County Superior Court. As amended, the complaint alleged six causes of action: restraint of trade (premised on the facts we have just described), unfair trade practices (this involved only below-cost pricing by the Millers and their business entity, California Copy), breach of contract (both oral and written), two types of fraud (the representations he would receive an exclusive Stockton dealership and a copier dealership in Sacramento), and two species of negligent misrepresentation (the same promises made with a less culpable state of mind). The motion to stay/dismiss followed in December 1991.

 ██ ██ In his declaration in opposition to the motion, Mr. Fisher asserted he was not aware of the choice-of-forum provision, and it was never

---

[6]"17.1 Dealer and Ricoh agree that this Agreement and all documents issued in connection therewith, shall be governed by and interpreted in accordance with the laws of the State of New York. . . . [A]ny appropriate state or federal district court located in the Borough of Manhattan, New York City, New York shall have exclusive jurisdiction over any case or controversy arising under or in connection with the Agreement . . . ."

called to his attention during negotiations for either set of contracts.[7] He further claimed all witnesses familiar with the negotiation resided in California. Ricoh claimed its files were located in its New Jersey offices, close to the New York forum, as were corporate witnesses who made decisions regarding Cal-State's territory and contracts. Ricoh also produced the first page of a complaint it filed in the Southern District of the New York federal court seeking payment on the debt owed by Cal-State on its account with Ricoh; although there is no date stamp, we discern by the docket number (92 Civ. 0435) that it was filed in early 1992.

The trial court's order essentially echoed its tentative ruling. In pertinent part, the court held "Although some of the allegations are independent of the forum[-]selection clause and the contract, the entire dispute between the parties is best decided in the state of New York, where there is already an action pending in the federal court. The existence of other parties does not prevent the court from issuing this stay. . . . The court notes that defendants California Copy, Inc., Gene Miller, and Joyce Miller[] did not oppose the motion. In the event that plaintiff is unable to obtain jurisdiction over those defendants in New York, plaintiff may apply for a partial lifting of the stay, or a severance of the claim against them." Cal-State timely sought the proper remedy of appeal. (§ 904.1, subd. (c); *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644, 651 [150 Cal.Rptr. 242, 586 P.2d 556].)

DISCUSSION

I

*Forum non conveniens*

Ultimately, we must be concerned with the principles governing enforcement of a contractual choice-of-forum clause. First, however, we discuss a related matter.

---

[7]Since he did not claim there was any active concealment of this clause in the arm's-length negotiations between the parties, this assertion—which strains credulity—is immaterial, as we long ago held (*Greve* v. *Taft Realty Co.* (1929) 101 Cal.App. 343, 351-353 [281 P. 641]; accord, *George* v. *Bekins Van & Storage Co.* (1949) 33 Cal.2d 834, 848 [205 P.2d 1037]) and as has been held in New York (*Generale Bank, New York Branch* v. *Choudhury* (S.D.N.Y. 1991) 779 F. Supp. 303, 305 [applying New York law]). Cal-State has not pressed this fact on appeal.

## A

■ As originated in federal case law, imported into California case law, and codified in section 410.30,[8] the doctrine of forum non conveniens allows a trial court discretion to decline to exercise jurisdiction over a cause and parties otherwise properly before it if it concludes the action may be more appropriately and justly tried elsewhere. (*Stangvik* v. *Shiley Inc.* (1991) 54 Cal.3d 744, 751 [1 Cal.Rptr.2d 556, 819 P.2d 14]; *Holmes* v. *Syntex Laboratories, Inc.* (1984) 156 Cal.App.3d 372, 377-378 [202 Cal.Rptr. 773]; *Great Northern Ry. Co.* v. *Superior Court* (1970) 12 Cal.App.3d 105, 109 [90 Cal.Rptr. 461].) The doctrine is most typically applied where the parties and the transaction underlying the litigation are foreign to the forum. (*Appalachian Ins. Company* v. *Superior Court* (1984) 162 Cal.App.3d 427, 434 [208 Cal.Rptr. 627].) The defendant bears the burden of proof in attempting to override the plaintiff's choice of forum. (*Stangvik, supra,* 54 Cal.3d at p. 751.) There is a 25-factor analysis to guide the trial court in its resolution of the issue, which is not disturbed absent an abuse of discretion. (*Holmes, supra,* 156 Cal.App.3d at p. 378.) These factors may be boiled down to three basic principles. Foremost is the availability of a suitable alternative forum for the plaintiff. (*Stangvik, supra,* 54 Cal.3d at pp. 751-752; Judicial Council com., 14 West's Ann. Code Civ. Proc. (1973 ed.) at p. 492; Rest.2d, Conf. of Laws, § 84, com. c.) The court then balances factors relating to the private interests of the litigants and the public interests of the forum state; among these, a resident plaintiff's choice of the forum is given substantial weight. (*Stangvik, supra,* 54 Cal.3d at pp. 751, 754-755; Rest.2d, Conf. of Laws, § 84, com. c.) ■ Federal courts have broader discretion in granting a forum non conveniens motion because of their power to transfer venue to a federal court in a different state, which results in their grant of transfer motions in situations not normally within the forum non conveniens doctrine. (*Holmes, supra,* 156 Cal.App.3d at p. 378; Rest.2d, Conf. of Laws, § 84, com. e.) Thus, California courts cannot blindly apply federal precedent.

## B

■ We have set out these principles applicable to noncontractually based forum non conveniens motions principally because of two of the plaintiff's arguments. In one, Cal-State manifests its belief the trial court did not consider the forum-selection clauses in the Ricoh contracts, basing this

---

[8]Section 410.30 and its procedural companion, section 418.10, codify the doctrine without specifying any particular factors, leaving those to be developed by case law. (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 303, p. 713.) Since the text of neither is at issue, we will not quote them. ·

view on the failure of the order to make any explicit reference to them. In the other, Cal-State argues that even if the court took the forum-selection clauses into account, the causes of action in the complaint are beyond their scope. In either event, Cal-State asserts that applying the principles summarized above to the evidence adduced in connection with the motion demonstrates the trial court abused its discretion in disturbing Cal-State's choice of California as a forum.

### 1.

With respect to the first argument, admittedly the trial court's order is cryptic as to the nature of the legal analysis that court brought to bear on the issue. However, there is no requirement that the trial court make any express ruling on a motion to stay/dismiss. It is axiomatic we review judicial action and not judicial reasoning. (*Mid-Century Ins. Co.* v. *Gardner* (1992) 9 Cal.App.4th 1205, 1216 [11 Cal.Rptr.2d 918].) Therefore, even if the plaintiff is correct and the trial court's order was based on application of traditional forum non conveniens principles, this is irrelevant if (as we demonstrate next) the resolution can be upheld through enforcement of the forum-selection clauses. We consequently have no call to measure the trial court's order by these criteria.

### 2.

The second argument fares no better. The pertinent language of the forum-selection clauses provides that "any case or controversy arising under or in connection with the Agreement[s]" shall be heard in a New York court.

Our Supreme Court has recently expressed its view of the expansiveness of the scope to be accorded a choice-of-law contractual clause, an issue "closely related" to choice-of-forum provisions. (*Nedlloyd Lines B.V.* v. *Superior Court* (1992) 3 Cal.4th 459, 464 [11 Cal.Rptr.2d 330, 834 P.2d 1148].) "When two sophisticated, commercial entities agree to a choice-of-law clause like the one in this case, the most reasonable interpretation of their actions is that they intended for the clause to apply to all causes of action arising from or related to their contract." (*Id.* at. pp. 468.) The contract between the parties stated it was to be "governed by" Hong Kong law and did not provide for any exceptions. (*Id.* at pp. 468-469.) The court concluded this language meant Hong Kong law applied not only to construction of the contract but to any cause of action based on the relationship created by the contract. (*Id.* at p. 469.)

"Our conclusion in this regard comports with common sense and commercial reality. When a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from

the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to *all* disputes arising out of the transaction or relationship. We seriously doubt that any rational businessperson, attempting to provide by contract for an efficient and business-like resolution of possible future disputes, would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship." (3 Cal.4th at p. 469.) Any argument to the contrary "would require extensive litigation of the parties' supposed intentions regarding the choice-of-law clause . . . [and] is more likely the product of postdispute litigation strategy, not predispute contractual intent." (*Id.* at p. 470.) Thus, "a valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action *arising from or relating to* that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates." (*Ibid.* [italics added].)

We see no reason to read any differently language in a choice-of-forum clause which is identical to that just emphasized. (Cf. *Stewart Organization, Inc.* v. *Ricoh Corp.* (11th Cir. 1987) 810 F.2d 1066, 1070-1071, affd. on different grounds (1988) 487 U.S. 22 [101 L.Ed.2d 22, 108 S.Ct. 2239] [finding the choice-of-law provision in the standard Ricoh contract to embrace "all causes of action arising directly or indirectly from the business relationship evidenced by the contract" because tort, criminal law, and antitrust law claims often intertwine with commercial contractual issues]; *Manetti-Farrow, Inc.* v. *Gucci America, Inc.* (9th Cir. 1988) 858 F.2d 509, 514 [all other causes of action relate to question of whether parties in compliance with contract, so within ambit of choice-of-forum clause].) The entire gist of the complaint in the present action relates to allegedly false promises made in the course of the negotiations (that culminated in contracts with integration clauses) and the subsequent conduct of the relationship between the parties created by the contracts.[9] All the causes of action are consequently within the scope of the forum-selection clauses.[10]

---

[9]Cal-State faults Ricoh for failing to identify "which" forum-selection clause was being enforced. This misses the point. The rights and obligations of the parties are determined by the *totality* of the contracts they executed and thus *all* the clauses are being enforced. Since the clauses are identical, we need not determine the proper resolution if there had been different language in the multiple forum-selection clauses.

[10]Since the trial court explicitly left Cal-State the option of seeking to sever the apparently unrelated cause of action against the Millers and California Copy if it was unable to proceed against these defendants in the New York action, the existence of this cause of action plays no part in our analysis of the issue.

## C

Neither the conclusory language used in ruling on the motion nor the scope of the forum-selection clauses forces us to apply principles of forum non conveniens that are applicable where a plaintiff had unbridled freedom to choose the forum and the defendant was simply seeking to substitute that choice with a forum more to its liking. We instead shift our attention to principles applied in the situation where a plaintiff has contracted away its right to its forum of preference and a defendant is seeking to enforce its contractual right to its preferred forum.

## II

### Enforcement of forum-selection clauses

### A.

Under the modern rule, "The parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction, but such an agreement will be given effect unless it is unfair or unreasonable." (Rest.2d, Conf. of Laws, § 80; accord, Annot. (1984) 31 A.L.R.4th 404; 2 Witkin, *op. cit. supra*, Jurisdiction, § 289(b), p. 696.) California declared its adherence to this rule in *Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491 [131 Cal.Rptr. 374, 551 P.2d 1206] (*Smith*).[11] "In this mandate action we consider the extent to which California courts in breach of contract actions may give effect to a contractual forum selection clause providing for trial of the action in another state." (*Id.* at p. 493.) Although California has a public policy in favor of access to its courts by resident plaintiffs, this is not thwarted by allowing residents to surrender this right voluntarily in the course of negotiations; "[i]n so holding we are in accord with the modern trend which favors [enforcement] of such forum selection clauses." (*Id.* at p. 495.) In so holding, the court relied on the United States Supreme Court decision in *The Bremen* v. *Zapata Off-Shore Co.* (1972) 407 U.S. 1, 10 [32 L.Ed.2d 513, 520-521, 92 S.Ct. 1907], which had enforced a forum-selection clause as a matter of federal common law in an admiralty proceeding.

[11]There has been no discussion by the parties regarding the enforceability of the choice-of-law provision in the contract. Assuming New York law applies (cf. *Smith, supra*, 17 Cal.3d at p. 494 [choice-of-law point not raised, court assumes Pennsylvania law applies]), Ricoh adduced authority in the trial court that New York follows the Restatement Second rule. (*DiRuocco* v. *Flamingo Beach Hotel & Casino, Inc.* (1990) 163 A.D.2d 270 [557 N.Y.S.2d 140].) In the absence of any evidence that the courts of New York have placed nuances upon the Restatement Second rule which differ from California law, we may apply the law of our own jurisdiction. (*Nedlloyd Lines B.V., supra*, 3 Cal.4th at p. 469, fn.7.)

"[A forum-selection provision] will be disregarded if it is the result of overreaching or of the unfair use of unequal bargaining power or if the forum chosen by the parties would be a seriously inconvenient one for the trial of the partic[u]lar action." (Rest.2d, Conf. of Laws, § 80, com. a.) The *Smith* court agreed with this formulation. "No satisfying reason of public policy has been suggested why enforcement should be denied a forum selection clause appearing in a contract entered into *freely* and *voluntarily* by parties who have negotiated *at arms' length*. For the foregoing reasons, we conclude that forum selection clauses are valid and may be given effect[ ] in the court's discretion and in the absence of a showing that enforcement . . . would be *unreasonable*." (*Smith, supra,* 17 Cal.3d at pp. 495-496 [italics supplied].)

In an earlier reference to the "modern trend," the *Smith* court gave some content to the otherwise-empty husk of the conclusory term "unreasonable": "the party assailing the clause [must] establish[ ] that its enforcement would be unreasonable, i.e. that the forum selected would be *unavailable* or *unable to accomplish substantial justice*." (17 Cal.3d at p. 494, italics supplied; accord *The Bremen, supra,* 407 U.S. at p. 18 [32 L.Ed.2d at p. 525].) As a further measure of reasonability, the court in *Furda* v. *Superior Court* (1984) 161 Cal.App.3d 418 [207 Cal.Rptr. 646] added a requirement that the choice of forum have some rational basis in light of the facts underlying the transaction. (*Id.* at p. 426; cf. *The Bremen, supra,* 407 U.S. at p. 17 [32 L.Ed.2d at pp. 524-525] [remarking that choice of forum reasonable because neutral and experienced in subject matter].)[12] On the other hand, neither inconvenience nor additional expense in litigating in the selected forum is part of the test of unreasonability. (*Smith, supra,* 17 Cal.3d at p. 496; *Furda, supra,* 161 Cal.App.3d at pp. 426-427; *The Bremen, supra,* 407 U.S. at p. 16 [32 L.Ed.2d at pp. 523-524]).

The fact the forum-selection clause is contained in a contract of adhesion and was not the subject of bargaining does not defeat enforcement as a matter of law, where there is no evidence of unfair use of superior power to impose the contract upon the other party and where the covenant is within the reasonable expectations of the party against whom it is being enforced. (*Bos Material Handling, Inc.* v. *Crown Controls Corp.* (1982) 137 Cal.App.3d 99, 108 [186 Cal.Rptr. 740]; *Carnival Cruise Lines* v. *Shute* (1991) __ U.S. __, __ [113 L.Ed.2d 622, 633, 111 S.Ct. 1522]; *Furda,*

---

[12]Although the *Furda* court provides no express authority for including this as an aspect of reasonability, we note a similar requirement is a factor in enforcement of choice-of-law provisions. (*Nedlloyd Lines B.V., supra,* 3 Cal.4th at p. 466; Rest.2d, Conf. of Laws, § 187, com. f.)

*supra*, 161 Cal.App.3d at p. 426; cf. *Eads* v. *Woodmen of the World Life Ins.* (Okl.Ct.App. 1989) 785 P.2d 328, 329, 331 [contract invalid because plaintiff required to sign it in order to retain job].) That a business with transactions in multiple jurisdictions might insist on one forum in all its contracts is not of itself objectionable. (*Carnival Cruise Lines, supra*, ___ U.S. at p. ___ [113 L.Ed.2d at pp. 632, 633].)

Although not pertinent here, we also note a court will refuse to enforce a forum-selection clause if this will bring about a result contrary to the public policy of the forum. (*Furda, supra*, 161 Cal.App.3d at p. 427; *The Bremen, supra*, 407 U.S. at p. 15 [32 L.Ed.2d at p. 523].)

■■■ A defendant may enforce a forum-selection clause by bringing a motion pursuant to sections 410.30 and 418.10, the statutes governing forum non conveniens motions, because they are the ones which generally authorize a trial court to decline jurisdiction when unreasonably invoked and provide a procedure for the motion. (*Furda, supra*, 161 Cal.App.3d at pp. 424-425; 2 Witkin, *op. cit. supra*, Jurisdiction, § 307, pp. 720-721; Rest.2d, Conf. of Laws, § 80, com. a ["the fact that the action is brought in a state other than that designated in the contract affords ground for holding that the forum is an inappropriate one and that the court in its discretion should refuse to entertain this action"].) Significantly, the party opposing the enforcement of a forum-selection clause (generally the plaintiff) bears the burden of proof. (*Smith, supra*, 17 Cal.3d at p. 496.)

In contrast with the abuse-of-discretion standard of review applicable in a noncontractual forum non conveniens motion, a substantial-evidence standard of review applies where a forum has been selected by contract. (*Lifeco Services Corp.* v. *Superior Court* (1990) 222 Cal.App.3d 331, 334 [271 Cal.Rptr. 385].) ■■■ As this court has recently explained the distinction, the substantial-evidence rule measures the quantum of proof adduced at a hearing and assesses whether the ultimate issues have been established by a "solid, reasonable[,] and credible showing," while the abuse-of-discretion standard measures whether the act of the lower tribunal is within the range of options available under governing legal criteria in light of the evidence before the tribunal. (*Department of Parks & Recreation* v. *State Personnel Bd.* (1991) 233 Cal.App.3d 813, 830-831 [284 Cal.Rptr. 839].) ■■■ While none of the contractual forum non conveniens cases have explicitly stated the standard of review, it is apparent from their discussion that they are de facto applying the substantial-evidence test, and there is a meaningful basis for distinction. In ruling on a forum non conveniens motion where no contract is involved, the lower tribunal decides whether or not to

exercise jurisdiction based on the evidence before it in light of legally prescribed criteria. Some criteria may be present, some not; ultimately, the review does not depend upon the sufficiency of the evidence before the lower tribunal but whether it correctly applied the pertinent criteria. On the other hand, in a contractual forum non conveniens motion, the trial court must determine if there is sufficient evidence to satisfy the requirements for invalidating a binding contract. If the trial court finds there are facts present which satisfy these criteria, it *must* act in a particular way; there is no discretion involved. The reviewing court is thus involved in determining the quantum of evidence adduced, not the manner in which factors were applied. (Cf. *People* v. *Jackson* (1992) 10 Cal.App.4th 13, 22 [12 Cal.Rptr.2d 541] [deciding between abuse-of-discretion and substantial-evidence standards of review for motions contesting peremptory challenges].)

## B.

Having set out the applicable legal principles, we turn to the plaintiff's pertinent arguments.

### 1.

Cal-State's first argument relating to the clauses asserts the forum-selection clause should not be enforced because it was a boilerplate term over which no negotiation was possible and which was outside Cal-State's reasonable expectations. However, as the authority we have cited above makes clear, the fact that Cal-State had no power to change this term of the contract is of no import so long as it signed the contract freely and voluntarily, and possessed the power to walk away from negotiations if displeased with the provision. Nor is the provision outside the reasonable expectations of Cal-State—obviously if two parties to a contract are domiciled on opposite coasts, either one party or the other will wind up with the home-court advantage (in the more literal sense of the expression), so the plaintiff would have to recognize this would be part of the price of doing business with Ricoh (indeed, as noted, the plaintiff has abandoned on appeal his claim that he was unaware of the clause). Finally, the fact that Ricoh insists on litigating all its contractual disputes in New York is not irrational, and there is no evidence the forum was selected with the design to thwart an opponent's ability to litigate.

### 2.

The plaintiff argues the lack of "nexus" of the chosen forum (New York) to the domicile of the parties or the place of execution of the contracts

renders the choice of forum unenforceable. However, Cal-State takes too limited a view of the nexus requirement. The choice of forum need only have a "reasonable" basis even if it is unrelated to the domiciles or transactions involved. (Cf. Rest.2d, Conf. of Laws, § 187, com. f [selection of law unrelated to parties].) While New York City is not (strictly speaking) Ricoh's domicile, it is a major commercial center with propinquity to Ricoh's headquarters. Without denigrating the abilities of the New Jersey courts, we find it reasonable for Ricoh to wish to make use of the New York City courts which would have (at least institutionally) a great deal of expertise in commercial litigation. (*The Bremen, supra,* 407 U.S. at p. 17 [32 L.Ed.2d at pp. 524-525] [reasonable to choose neutral forum with expertise in subject matter].) Thus, there is nothing *irrational* about the forum selected by the contract which would defeat its enforcement.

3.

■ Citing *Lifeco, supra,* 222 Cal.App.3d 331, the plaintiff asserts the factors relevant to a forum non conveniens motion which is *not* contractually based also form part of the analysis where a forum has been selected pursuant to contract. We cannot accept this proposition.

According to the *Lifeco* court, "In addition to the presence of a forum selection clause, some other relevant factors are the relative availability of evidence and burden of trial in one place rather than another; a state's interest in providing its residents a forum or regulating the activity involved; ease of access to alternative forums; avoidance of multiplicity of suits and conflicting adjudications; and closeness of connection between the cause of action and the defendant's local activities. (See *Abbott Power Corp.* v. *Overhead Electric Co.* (1976) 60 Cal.App.3d 272, 280 . . . ; *Fisher Governor Co.* v. *Superior Court* (1959) 53 Cal.2d 222, 225-226 . . . ; see also *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 151 . . . .)" (222 Cal.App.3d at p. 335.)

The relevance of these factors to *what* is not explicit. However, in each of the cited cases the courts were determining whether nonresident defendants had engaged in sufficient contacts with California to justify the assumption of personal jurisdiction over them. All of the cases indeed listed the factors cited by the *Lifeco* court (which had their genesis in *Fisher Governor Co.* v. *Superior Court* (1959) 53 Cal.2d 222 [1 Cal.Rptr. 1, 347 P.2d 1]). None of these cases, however, involved a forum-selection clause or a motion for forum non conveniens (which, after all, does not even come into play until a court *has* jurisdiction). The significance of the factors is explained in

*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143 [127 Cal.Rptr. 352, 545 P.2d 264]: "[I]n situations when, as here, justification for the exercise of jurisdiction is not obvious, the convenience of the parties is a factor to be considered in determining whether it would be fair to exercise jurisdiction over a defendant who resides in another state." (16 Cal.3d at pp. 150-151.)

If the *Lifeco Services Corp.* court was stating these factors are relevant to the decision to accept jurisdiction in the first place over the party objecting to California as a forum, this is unremarkable. However, if the *Lifeco Services Corp.* court is holding that these additional factors are relevant despite the presence of an explicit forum-selection clause, we decline to follow their holding since their authority does not support that conclusion and we otherwise find the two situations inapposite. As we noted earlier, the general factors are pertinent only in the *absence* of a contractual provision, since under those circumstances neither party possesses a right to any particular forum and the selection of one over the other requires the weighing of a gamut of factors of public and private convenience, not to mention the strong interest of a plaintiff's domicile in providing the plaintiff access to its courts. However, a party which has contracted away its right to choose its home forum (as well as all the concomitant conveniences of a home forum) has presumably done so because the value it receives from the negotiated deal is worth the chance the party may be required to litigate disputes elsewhere. To apply the general factors in this context would in essence be rewriting the bargain struck between the parties, which might not have been consummated in the absence of the forum-selection clause. Therefore, we will not include the *Great Northern* factors into our analysis of the validity of the clauses.

### 4.

The plaintiff cites *Standard Office Systems* v. *Ricoh Corp., Inc.* (W.D.Ark. 1990) 742 F. Supp. 534 as a case which refused to give determinative effect to the standard Ricoh forum-selection clause. Although in light of recent events the state of Arkansas has gained added notoriety, nonetheless this is simply the decision of a federal trial court applying the federal statute allowing for transfer of venue from one federal district court to another. It is therefore inapposite.

### 5.

The plaintiff is left with its claim that New York is a forum which is unavailable or unable to accomplish substantial justice. At most, the plaintiff here has shown increased inconvenience and expense, which is

insufficient. Therefore, the forum-selection clause may properly be enforced through a stay on the California action. It should be noted that the California action remains available in the event the New York forum in fact proves unavailable.[13]

## DISPOSITION

The judgment (order) is affirmed.

Puglia, P. J., and Sims, J., concurred.

---

[13]Thus, to the extent that settlement with Ricoh constitutes a change of circumstances, Cal-State may apply in the trial court for a relief of the stay on the cause of action against the remaining defendants.