Filed 1/27/14 Schine v. Property Solutions International CA2/1

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| A. KEVIN SCHINE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>PROPERTY SOLUTIONS<br>INTERNATIONAL, INC.,<br><br>    Defendant and Respondent. | B240853<br><br>(Los Angeles County<br>Super. Ct. No. SC115304) |

APPEAL from an order of the Superior Court of Los Angeles County. Lisa Hart Cole, Judge. Affirmed.

A. Kevin Schine, in pro. per., for Plaintiff and Appellant.

Stutz Artiano Shinoff & Holtz, Paul V. Carelli IV and Derek W. Paradis for Defendant and Respondent.

_____

We are asked to determine whether a forum selection clause in a contract is valid and applicable to a complaint for fraud filed by A. Kevin Schine. We answer both questions in the affirmative and affirm the order of the trial court granting the motion of Property Solutions International, Inc. (Property Solutions) to stay the action on grounds of forum non conveniens.[1]

## BACKGROUND

### A. The three agreements

This appeal concerns a Utah forum selection clause contained in the last of three agreements concerning the lease and subsequent purchase by Property Solutions from Schine of "46 domain names related to real estate leasing that ended in vacancy.com, including apartmentvacancy.com, officevacancy.com, homevacancy.com, lodgingvacancy.com, storevacancy.com and condovacancy.com" (domain names). During the relevant period, Property Solutions also purchased the domain name vacancy.com from a third party.

The first agreement, entitled, "Purchase and Option Agreement of *Vacancy.com," was entered into by Schine and Property Solutions in October 2003 (Option Agreement). Property Solutions agreed to pay Schine $6,000 for "usage rights of the domain names '*Vacancy.com'" for three years. Under the terms of the Option Agreement, Property Solutions had the option to buy the 46 "*Vacancy.com" domain names owned by Schine for $30,000. The Option Agreement required Property Solutions to make an additional payment of $50,000 if any of the domain names generated $10 million in annual sales. The lease was to terminate and ownership of the domain names was to revert to Schine if Property Solutions did not exercise the purchase option before the end of the three-year period. Eventually, the parties declared the first agreement null and void.

The second agreement, entitled, "Purchase Agreement of *Vacancy.com," was entered into by Schine and Property Solutions in September 2004 (Purchase Agreement).

---

[1] Schine's motion for judicial notice filed on January 6, 2014, is denied.

2

Property Solutions agreed to pay $7,000 to Schine in exchange for the transfer of ownership of the domain names from Schine to Property Solutions and the termination of the Option Agreement.  Property Solutions agreed to pay Schine an "additional $50,000 one-time payment" if the domain "Vacancy.com and/or" the domain names generated $10 million in annual sales.  The Purchase Agreement contained a forum selection clause stating, in part, "It is agreed that the jurisdiction for any action commenced by Schine to enforce the reversion rights under this agreement in the event [Property Solutions] fails to make the payments referenced in Paragraphs 2(a) and/or 2(b) shall be any Superior Court located in the County of Los Angeles, California."  The payments referenced in paragraphs 2(a) and 2(b) consisted of two partial payments, totaling $7,000, which constituted the purchase price.

The third agreement, entitled, "Release Agreement between Property Solutions International, Inc. and Kevin Schine dated May 25, 2010," was entered into by Schine and Property Solutions in May 2010 (Release Agreement).  It identified Schine as having a Beverly Hills address and Property Solutions as having "its primary place of business" in Utah.  The Release Agreement acknowledged that Schine had "previously sold, transferred, conveyed and assigned to Property Solutions, all of [Schine's] right, title and interest in and to" the domain names.  In exchange for a "one-time payment, of $3,000," the agreement stated Schine "releases and will forever hold Property Solutions harmless from all debt, encumbrances and obligations relating to the Domains.  Further, in consideration of the receipt of such payment, [Schine] does hereby forever release and will hold Property Solutions harmless from any other obligations related to the Domains . . . , including but not limited to any other monetary payment obligations contained in any other agreement between the parties . . . ."  The $3,000 payment was made "in lieu of any afore agreed upon payments or encumbrances, and fulfills any and all obligations by Property Solutions to [Schine] regarding the Domains with respect to any other matter."

The Release Agreement contained a forum selection clause stating, "This agreement shall be interpreted under the laws of the State of Utah.  Any litigation under

3

this agreement shall be resolved in the trial courts of Utah County, State of Utah. [¶] Should any part of this Agreement be rendered or declared invalid by a court of competent jurisdiction in the State of Utah, such invalidation of such part or portion of this Agreement should not invalidate the remaining portions thereof, and they shall remain in full force and effect."

## B. The complaint

On December 19, 2011, Schine filed a complaint in the Superior Court of Los Angeles County against Property Solutions (complaint), alleging that he had been fraudulently induced by Property Solutions to enter the Release Agreement. The complaint states causes of action for fraud and deceit; negligent misrepresentation; intentional misrepresentation; concealment; false promise; breach of fiduciary duty; constructive fraud; and breach of the covenant of good faith and fair dealing.

After reciting facts concerning the Option and Purchase Agreements, the complaint alleges that, under the Release Agreement, Property Solutions paid Schine $3,000 in return for Schine's giving up "his $50,000 contingent participation interest in vacancy.com and the 46 domains that Schine had sold to [Property Solutions]." The complaint goes on to state that an executive of Property Solutions induced Schine to enter into the Release Agreement by telling him that Property Solutions had decided not to enter into the apartment Internet listing service business and intended to sell the "vacancy.com domain" name. The executive falsely offered to "buy out" for $3,000 Property Solutions's $50,000 contingent payment obligation under the terms of the Purchase Agreement "to avoid any disputes with the future domain owner." According to the complaint, the executive's representations to Schine were false and Property Solutions actually was preparing to use the domain names to enter the apartment Internet listing business. The executive's misrepresentations induced Schine to "sell his interest back to [Property Solutions] at an artificially suppressed price." Had he known the true facts, "Schine would have sold his $50,000 contingent interest for a higher price . . . or Schine would have held onto his contingent interest until the $50,000 contingent payment

came due." When Schine learned of Property Solutions's launching of the "vacancy.com" Web site, Schine sought to rescind the Release Agreement. The complaint sought special damages of no less than $47,000, plus punitive damages on most of the claims. That amount was calculated by deducting the $3,000 paid by Property Solutions from the $50,000 contingent payment obligation.

## C. The motion to dismiss or stay

Property Solutions filed a motion to dismiss or stay the complaint on grounds of forum non conveniens. In his opposition, Schine submitted a declaration stating that the Purchase Agreement had been amended orally. The trial court sustained Property Solutions's objection on the ground of relevance. After argument, the trial court granted Property Solutions's motion to stay on grounds of forum non conveniens.

The trial court determined that the allegations of the complaint did not pertain to the Purchase Agreement and were based solely on the allegation that Property Solutions fraudulently induced Schine to enter into the Release Agreement. The court noted that "[i]n order for [Schine] to reassert any rights under the Purchase Agreement, [Schine] must first succeed in invalidating the Release Agreement, which is the entire purpose of this complaint." The court further concluded that the Utah forum selection clause in the Release Agreement was mandatory; the Utah forum selection clause was sufficiently broad to encompass the complaint's "fraud in the inducement/tort claims"; the complaint did not assert that the Utah forum selection clause itself was the product of fraud or coercion; Schine had been capable of negotiating and amending the terms of the Purchase Agreement; and Schine failed to establish that enforcement of the Utah forum selection clause was unreasonable, unconscionable, or in violation of California public policy.

Schine filed a timely appeal.

5

## DISCUSSION

### A. Standard of review

We review the trial court's ruling on a motion to stay or dismiss for forum non conveniens for abuse of discretion. (*America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 9.)

### B. The trial court did not abuse its discretion in granting Property Solutions's motion to stay the action on grounds of forum non conveniens

#### 1. *Schine's claim arises under the Release Agreement, not the Purchase Agreement*

Schine contends that the Los Angeles forum selection clause in the Purchase Agreement applies and that the Utah forum selection clause in the Release Agreement does not. In so doing, he disputes that his claim arises "under" the Release Agreement.

We examine the gravamen of Schine's claim to determine which agreement it arises under. Schine's complaint is that he was induced by fraud to give up his contingent right to be paid $50,000. He received that right under the Purchase Agreement. He has no complaint that he was fraudulently induced to enter the Purchase Agreement whereby he obtained the right he now asserts.

Quite to the contrary, he *lost* his contingent right to the $50,000 as a result of signing the Release Agreement. Basic logic results in the conclusion that his claims arise under the Release Agreement, whereby that right was lost.

Schine's own words illustrate that his claim arose under the Release Agreement. In his complaint, Shine described his fraud claim by stating: "In reliance on [Property Solutions's] representations, [Schine] was induced to and did sell to [Property Solutions] his $50,000 contingent participation without sufficient consideration and under undue influence, based upon the misrepresentations, omissions and concealments of [Property Solutions]. Had [Schine] known the actual facts, [he] would not have accepted [Property Solutions's] Buyout at $3,000. Shine would have sold his $50,000 contingent interest for

6

a higher price if Schine had known the true facts, or Schine would have held onto his contingent interest until the $50,000 contingent payment became due."

When Schine later attempted to boil his claim down to its essence, he stated: "'In simple form, my main claim is that the fraud and deceit of [Property Solutions] caused me to sell my contingent interest for a lower price . . . .'"

Schine's damage calculation underscores that his claim arises under the Release Agreement, not the Purchase Agreement. His damage claim is $50,000 minus the $3,000 he received in exchange for giving up the contingent right to the $50,000, adjusted for other considerations. That right was lost as a result of entering the Release Agreement.

In addition, by its own terms, the Los Angeles forum selection clause in the Purchase Agreement is inapplicable to the claims Schine now asserts. That forum selection clause limited its scope to an action whereby Properly Solutions failed to pay the $7,000 purchase price. There is no confusion here that Property Solutions failed to pay the $7,000.

Schine argues that because the alleged fraud occurred while the Purchase Agreement was in effect and was discovered after the Release Agreement was executed, the Purchase Agreement and its Los Angeles forum clause governs the action. Schine's argument does not advance his cause, but supports our conclusion that the gravamen of the complaint was the alleged fraudulent inducement of Schine to enter into the Release Agreement, based on alleged fraudulent conduct that he claims occurred before he executed the Release Agreement.

Shine also contends that, because the complaint did not seek rescission of the Release Agreement, he was not suing under the Release Agreement and, therefore, the Utah forum selection clause does not apply. This argument is unsound because the gravamen of the complaint was that Schine was fraudulently induced to enter the Release Agreement. In light of that, the forum selection clause in the Release Agreement would have applied whether or not Schine chose to pursue a cause of action for rescission.

7

Schine also takes great pains to make it clear that his claim is based on fraud, not breach of the Purchase Agreement or any other contract. This eliminates the possibility that Schine is pursuing a breach of contract claim under the Purchase Agreement.

**2. *The Release Agreement's forum selection clause applies because it is not ambiguous, unreasonable, unconscionable, or otherwise unenforceable***

The Release Agreement's forum selection clause provides that "[a]ny litigation under this agreement shall be resolved in the trial courts of . . . Utah." The word "under" in forum selection clauses is read expansively to include a wide variety of claims, including various types of fraud, various types of negligent misrepresentation, restraint of trade, unfair trade practices, and breach of contract. (*See Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1671, 1673, fn. 6 (*Cal-State*).)

We are not persuaded by Schine's argument that a forum selection clause must contain the words "governed by" instead of "under." Schine cites *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459 (*Nedlloyd*) in support of this contention. *Nedlloyd* does not hold that an agreement must contain the magic words "governed by" to designate a choice of law or, by analogy, a forum. It merely holds that "a valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized." (*Nedlloyd*, at p. 470.) Schine has not persuaded us that the term "under" is inadequate. Indeed, that word is commonly used in valid forum selection clauses. (E.g., *Cal-State*, *supra*, 12 Cal.App.4th at pp. 1671, 1673, fn. 6.)

Because Schine's claim arises under the Release Agreement, the Utah forum selection clause applies unless it is ambiguous, unreasonable, unconscionable or otherwise unenforceable.

**a. *The Utah forum selection clause is not ambiguous***

Schine claims the Utah forum selection clause is ambiguous. His principal argument appears be that, because there is a Los Angeles forum selection clause in the

Purchase Agreement and a Utah forum selection clause in the Release Agreement, there is an ambiguity that requires the two agreements to be construed together and the forum issue decided only after extrinsic evidence is admitted.

We see no ambiguity resulting from a change in the location of the selected forum here. The contracts were entered almost six years apart and concerned different transactions and subject matter. The first conveyed the right to the domains to Property Solutions and imposed on it the contingent obligation to pay $50,000. The second released Property Solutions from the obligation to pay $50,000. The transactions were polar opposites of one another in that the first imposed an obligation the second took away. One would not necessarily expect that one contract would explain the other when they had such contrary objectives and were not made at the same time or under the same circumstances.

Each agreement was supported by different consideration. One element of the consideration for the second transaction may well have been to give Property Solutions the additional benefit of being sued in its own state in an action such as this one.

Shine also argues that the word "under" in the Release Agreement is applicable only to claims for breach of contract or specific performance. We cannot find a logical basis in the contract language or elsewhere in the record for this contention. Indeed, *Cal-State* held that a forum selection clause using the term "under this agreement" applied to fraud and negligent misrepresentation claims, not just contract claims. (*Cal-State*, *supra*, 12 Cal.App.4th at p. 1677.) Schine's interpretation contradicts the plain language of the forum selection clause, which simply is not amenable to Schine's reading of it.

Nor can we find a logical basis for Shine's similar contention that his claims were to be litigated in Los Angeles while Property Solutions's claims were to be litigated in Utah. Again, Schine's argument contradicts the plain language of the forum selection clauses in both agreements.

Schine also argues that there was a modification of the Purchase Agreement that should have been considered. Again, it is the Release Agreement, not the Purchase

9

Agreement entered six years earlier, under which Schine's claim arises. The trial court did not abuse its discretion in sustaining the objection to evidence of the alleged modification on the ground of relevance. (See Evid. Code, § 352; *McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 295–296 [trial court has broad authority as to relevancy issues; appellate court reviews orders as to relevance for abuse of discretion].)

Schine argues that we must follow the lead of the court in *Cal-State* in examining the language of several of a series of agreements. However, those agreements were relevant in that case. The Purchase Agreement is not relevant here. Also, the forum selection clauses were identical in the relevant contracts there. (*Cal-State*, *supra*, 12 Cal.App.4th at p. 1677.) Here they are not only different, but the Utah forum selection clause is far broader than the Los Angeles clause that concerns only the payment of the $7,000 purchase price. Schine's reliance on *Cal-State* is misplaced.

The trial court did not abuse its discretion in rejecting Schine's argument that alleged that ambiguities in the agreements required it to read the Purchase Agreement and Release Agreement together and to accept extrinsic evidence to contradict the clear terms of the Release Agreement.

### b. The Utah forum selection clause is not inconvenient, unconscionable, unreasonable, or otherwise unenforceable

Schine argues that the Utah forum selection clause is inconvenient, unconscionable, unreasonable and otherwise unenforceable.

Shine is correct that the trial court has discretion to refuse to enforce a forum selection clause that is unreasonable or unconscionable. "[F]orum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 496.) Similarly, if a clause in a contract is unconscionable, the court may refuse to enforce it. (Civ. Code, § 1670.5, subd. (a).)

10

Forum selection clauses are not offensive to California public policy. Indeed, California's policy favoring access to California courts by resident plaintiffs is satisfied in those cases where the plaintiff has freely and voluntarily negotiated away his or her right to a California forum. (*Smith, Valentino & Smith, Inc. v. Superior Court*, *supra*, 17 Cal.3d at p. 495.)

### (i) Inconvenience

The first step in determining whether to enforce a forum selection clause is to decide if it is mandatory or permissive. "A mandatory clause ordinarily is 'given effect without any analysis of convenience; the only question is whether enforcement of the clause would be unreasonable.'" (*Animal Film, LLC v. D.E.J. Productions, Inc.* (2011) 193 Cal.App.4th 466, 471.) This rule seems to recognize the principle that one who bargains to litigate in a particular distant forum cannot later be heard to complain that the forum bargained for is inconvenient.

The language of the Utah forum selection clause is clearly mandatory, as it uses the word "shall," indicating exclusive jurisdiction in the courts of Utah County, Utah: "Any litigation under this agreement shall be resolved in the trial courts of Utah County, State of Utah." This is the type of language that has been recognized as mandatory. (*Animal Film, LLC v. D.E.J. Productions, Inc., supra,* 193 Cal.App.4th at pp. 471–472.)

Because the clause is mandatory, the trial court was not required to consider inconvenience to Schine in determining whether to enforce the forum selection clause. This would have eliminated most of Schine's arguments based upon unreasonableness, unfairness and unconscionability, as these arguments are based principally on Schine's claim that he has limited financial resources that would make it too expensive for him to travel to Utah to pursue his claim.

Even if inconvenience were considered, Schine has made no persuasive argument that he should be released from the agreement that he signed to litigate only in Utah because it is inconvenient or too expensive for him to do so. "California courts routinely enforce forum selection clauses even where the chosen forum is far from the plaintiff's

11

residence." (*Net2Phone, Inc. v. Superior Court* (2003) 109 Cal.App.4th 583, 588–589 [forum selection clause with "take it or leave it" proposition, and not vigorously "bargained for," enforceable].)

### (ii) Unconscionability

Nor has Schine persuaded us that the forum selection clause is unconscionable.

An agreement is not unconscionable substantively or procedurally due to mere inconvenience. To be found unconscionable, the agreement must contain overly harsh terms or deprive the objecting party of meaningful choice, as evidenced by oppression or surprise. (*Carboni v. Arrospide* (1991) 2 Cal.App.4th 76, 83, 85.) We see no overly harsh terms or lack of meaningful choice here.

Indeed, it is not overly harsh for Schine to be required to litigate in Utah, since Utah is one of two logical forums. As noted, Schine is a Los Angeles county resident and Property Solutions is a Utah resident. Where two parties are residents of different states, it is inevitable that one will be required by a forum selection clause that designates a single forum to litigate in another state. Virtually any person who agrees to litigate in a forum outside their home state will suffer the additional expense and inconvenience necessitated by securing counsel in another state and possibly traveling there to trial and otherwise. Schine's arguments about the expense of litigating outside the home state could be made by any party signing a mandatory forum selection clause agreeing to litigate elsewhere. If Schine's argument that such a clause is unconscionable were accepted, most forum selection clauses would be invalidated.

In addition, if it were unconscionable to force Schine to litigate in Utah, Property Solutions could make a similar unconscionability argument, and the parties might find themselves without any forum.

### (iii) Unreasonableness

The party challenging the forum selection clause on the ground of unreasonableness must show that the forum selected would be unavailable or unable to accomplish substantial justice; that is, the choice of forum must have some rational basis

12

in light of the facts underlying the transaction. (*Cal-State*, *supra*, 12 Cal.App.4th at p. 1679.) Schine has not shown that the Utah forum is unavailable or unable to render substantial justice. Moreover, the forum selection clause has a rational basis because Property Solutions has its principal place of business in Utah. Therefore, Schine has not fulfilled the legal prerequisites for a showing of unreasonableness.

In addition, the same rationale discussed above as to why the forum selection clause is not unconscionable applies equally to show it is not unreasonable.

Schine also attacks the reasonableness of the forum selection clause by urging that Property Solutions was a fiduciary to him and he "is not a sophisticated businessperson, and was not represented by counsel." Schine has not provided any evidence that the Release Agreement was other than arm's length or that he lacked sophistication. An arm's length contractual relationship does not give rise to any fiduciary duty to the other party. (*Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 30–31 [arm's length contractual relationship is not, by itself, sufficient to create a fiduciary relationship where one would not otherwise exist].) Property Solutions did not have a fiduciary duty to Schine.

Considering all of the evidence, we have no reason to hold that the trial court abused its discretion when it rejected Schine's arguments that he should not be held to the forum selection clause because he was unsophisticated and unrepresented, stating that Schine negotiated and amended the agreements, including the forum selection clause at issue, and "was fully capable of amending and negotiating with [Property Solutions] regarding contractual terms."

Another reason why Schine finds it unreasonable for him to have to litigate in Utah is that he did not "anticipate that there would be a fraud claim, or that he would be forced to litigate in Utah." Such private, unexpressed interpretations may not be considered in interpreting a contract, even if it is ambiguous. (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109

13

Cal.App.4th 944, 956 ["The parties' undisclosed intent or understanding is irrelevant to contract interpretation."].)

Schine also seems to argue that it is unreasonable to force him to litigate in Utah because he was fraudulently induced to sign the agreement. As the trial court observed, Schine does not contend that he was fraudulently induced to enter the Utah forum selection clause. Nor would the record support such a contention. If we were entitled to address any issue of fraud, it would be fraud in the inducement of the Utah forum selection clause. Schine's argument addresses the agreement as a whole, not the forum selection clause. What Schine is really asking is to have California courts determine the issue of fraud at the forum non conveniens stage, usurping the role assigned to the Utah courts by the signed Release Agreement. This we cannot do.

Similarly, Schine contends that the Release Agreement was "simply a purchase by [Property Solutions] of an asset that Schine owned"; the Release Agreement was not a true release; the Release Agreement was not integrated; and the Release Agreement did not replace the Purchase Agreement. The narrow issue on appeal is whether the Utah forum selection clause applies. Whether the Release Agreement was integrated, the construction and interpretation of the Release Agreement, and whether Schine was fraudulently induced into signing the Release Agreement are issues for the Utah court, not for us, to decide.

Thus, the forum selection clause of the Release Agreement and not the forum selection clause of the Purchase Agreement applies. We conclude that the trial court did not abuse its discretion in granting Property Solutions's motion to stay the action on grounds of forum non conveniens.

## DISPOSITION

The order granting Property Solutions International, Inc.'s motion to stay the action on grounds of forum non conveniens is affirmed.

NOT TO BE PUBLISHED.

MILLER, J.*

We concur:


CHANEY, Acting P. J.


JOHNSON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.