Filed 3/13/23  LaCasse v. USANA Health Sciences, Inc. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MEGAN LACASSE, | C094406 |
| Plaintiff and Appellant, | (Super. Ct. No. 34202000278413CUOEGDS) |
| v. | |
| USANA HEALTH SCIENCES, INC., | |
| Defendant and Respondent. | |

Plaintiff Megan LaCasse appeals from an order of dismissal entered in favor of defendant USANA Health Sciences, Inc. (USANA) after the trial court granted USANA's motion to dismiss based on forum selection clauses in LaCasse's employment agreements.  LaCasse argues: (1) the evidence was insufficient to show that she assented to an agreement containing a forum selection clause; (2) the trial court erred in finding the forum selection clause to be mandatory, rather than permissive; and (3) USANA had the burden of showing that enforcing the forum selection clause would not diminish her substantive rights under California law.  We will reject these arguments and affirm.

1

# I. BACKGROUND

LaCasse commenced this action by filing a putative class action complaint against USANA in May 2020. The complaint alleges that LaCasse, an individual residing in California, was employed by USANA, an entity organized and existing in Utah, as an independent contractor or "Associate" from August 2015 to January 2017. The complaint asserts a single cause of action against USANA for violations of California's unfair competition law (Bus. & Prof. Code, § 17200, et seq.; UCL) based on alleged failures to properly calculate and pay overtime wages (Lab. Code, §§ 510 and 1198), provide meal breaks and rest periods (Lab. Code, §§ 226.7 and 512, subd. (a)), pay minimum wages (Lab. Code, §§ 1194, 1197, and 1197.1), and reimburse business expenses (Lab. Code, §§ 2800 and 2802).

## A. USANA's Motion

USANA moved to stay or dismiss the action on the ground of forum non conveniens. (Code Civ. Proc., § 410.30.)[1] The motion argued that LaCasse was bound by forum selection clauses making Utah the exclusive forum for litigation between the parties. The motion relied on a short form agreement entitled, "U.S. Associate Application & Agreement" (Associate Agreement) and a longer document entitled, "USANA Policies & Procedures / Compensation Plan" (USANA Policies).

The Associate Agreement contains a forum selection clause that provides as follows: "Venue and Jurisdiction for any action pertaining to this agreement or any disagreement or claim between the parties hereto shall be in Salt Lake County, State of Utah or in the United States District Court in and for the District of Utah, except where

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

the laws of your state expressly require the application of its laws. This agreement shall be governed by the laws of the state of Utah."

The Associate Agreement incorporates the USANA Policies by reference. The USANA Policies contain another forum selection clause, which provides as follows: "The exclusive jurisdiction and venue for all disputes, claims, and actions relating to the Associate Agreement or the interpretation thereof, or any dispute, claim or action between the parties hereto shall be Salt Lake County, State of Utah, or in the United States District Court in and for the District of Utah, unless the laws of the state in which the Associate resides expressly require otherwise. By signing the Associate Application and Agreement, all Associates consent to jurisdiction within these two forums. The law of the State of Utah shall govern disputes relating to the Associate Agreement."

The motion was supported by the declaration of Daniel Whitney, "Vice President of Ethics and Market Expansion" for USANA (Whitney Declaration). The Whitney Declaration attaches copies of the Associate Agreement and USANA Policies. Neither the Associate Agreement nor the USANA Policies contain LaCasse's name or bear her signature. However, the Whitney Declaration avers they were effective at the time LaCasse became an independent contractor in 2015. The Whitney Declaration further avers that LaCasse digitally signed the Associate Agreement through USANA's online registration portal on August 13, 2015, indicating her assent to be bound by it. The Whitney Declaration attaches a printout of the digital signature as an exhibit. The printout reflects LaCasse's name, identification numbers, and the time and date of signature. The printout does not identify the document LaCasse is said to have signed.

B.      *LaCasse's Opposition*

LaCasse opposed USANA's motion to stay or dismiss. LaCasse argued the forum selection clauses were unenforceable for lack of mutual assent. Specifically, she argued the Whitney Declaration failed to show she was ever presented with the Associate Agreement or USANA Policies, much less agreed to be bound by their terms. LaCasse

3

also argued the forum selection clauses in the Associate Agreement and USANA Policies were permissive, rather than mandatory, such that USANA had the burden to show that a stay or dismissal would be appropriate under the "traditional" forum non conveniens analysis. Even assuming the forum selection clauses were mandatory, LaCasse continued, USANA would have the burden to show that litigating her claims in Utah would not diminish her unwaivable rights under the Labor Code. (See *Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 154-155 (*Verdugo*).) LaCasse also argued the forum selection clauses were unreasonable and ran afoul of Labor Code section 925. LaCasse did not submit any evidence in support of her opposition.

## C.    *USANA's Reply*

USANA submitted a reply brief in further support of the motion to stay or dismiss. The reply brief argued the Whitney Declaration adequately established that LaCasse digitally signed the Associate Agreement, and thus agreed to be bound by its terms. The reply brief also argued that: (1) LaCasse accepted the terms of the Associate Agreement by her conduct; (2) the Associate Agreement incorporated the USANA Policies by reference; (3) the forum selection clauses in the Associate Agreement and USANA Policies were mandatory; (4) the UCL does not create an unwaivable right and does not shift the burden of proof to USANA; and (5) Labor Code section 925 does not apply.

The reply brief was accompanied by a declaration from Jeff Benedict, "Executive Director of Application Development" for USANA (Benedict Declaration). The Benedict Declaration describes the online process by which an interested person or "enrollee" becomes an USANA associate. That process requires the enrollee to confirm that he or she has read the Associate Agreement and USANA Policies and submit an electronic signature indicating his or her assent. The Benedict Declaration explains that enrollees also have an option to indicate that they intend to sign later.

According to the Benedict Declaration, LaCasse began the online enrollment process on August 10, 2015, and opted to sign later. She returned to USANA's online

4

portal on August 13, 2015, using a user ID and secure password generated during the initial enrollment process. She then submitted an electronic signature, which was stored in a secure database for such signatures.

D.    *The Trial Court's Tentative and Final Rulings*

The trial court issued a tentative ruling denying USANA's motion to stay or dismiss on May 19, 2021. The tentative ruling found that the forum selection clauses were mandatory, not permissive. Accordingly, the tentative ruling found that the traditional forum non conveniens analysis did not apply, and LaCasse had the burden to show the forum selection clauses were invalid or enforcement of them would be unreasonable.

The tentative ruling accepted and considered the Benedict Declaration, over the apparent objections of LaCasse.[2] The tentative ruling found the Whitney Declaration and Benedict Declaration were together sufficient to show that the Associate Agreement and/or USANA Policies had been presented to LaCasse, and LaCasse electronically signed the Associate Agreement on August 13, 2015. The tentative ruling further found that the USANA Policies were effectively incorporated into the Associate Agreement, and Labor Code section 925 did not apply, as the parties' contractual relationship was not entered into, modified, or extended on or after that statute's January 1, 2017 effective date.

However, the tentative ruling also found that LaCasse's UCL cause of action was based on unwaivable rights provided by the Labor Code, which shifted the burden to USANA to show that enforcing the forum selection clauses would not diminish those rights. (See *Verdugo, supra,* 237 Cal.App.4th at p. 150.) The tentative ruling concluded

---

[2] We have not been provided with a copy of LaCasse's objections to the Benedict Declaration.

5

that USANA had not carried that burden.  Accordingly, the trial court tentatively denied the motion to stay or dismiss.

Following argument, the trial court reversed the tentative ruling and granted the motion.  The trial court incorporated by reference the factual and legal analysis set forth in the tentative ruling.  However, the trial court concluded that the determination in the tentative ruling that LaCasse's UCL cause of action was based on unwaivable rights had been incorrect.  Relying on *Ryze Claim Solutions LLC v. Superior Court* (2019) 33 Cal.App.5th 1066 (*Ryze*), the trial court reasoned that Labor Code section 925 was inapplicable, and thus could not provide a public policy basis on which to refuse to enforce the forum selection clauses.  (*Ryze, supra,* at p. 1072.)  Accordingly, the trial court concluded that LaCasse retained the burden to show she was prosecuting unwaivable rights under the UCL or that enforcement of the forum selection clauses would be unreasonable.  The trial court further concluded that LaCasse failed to carry that burden, and therefore granted the motion.  This appeal timely followed.

## II.  DISCUSSION

*A.  Applicable Legal Principles and Standard of Review*

Forum non conveniens is an equitable doctrine under which a trial court has discretion to decline to exercise jurisdiction over a transitory cause of action that it believes may be more appropriately and justly tried elsewhere.  (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*).)  California has codified this principle in section 410.30, which provides:  "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."  (§ 410.30, subd. (a); see also § 418.10.)

In determining whether to grant a motion based on forum non conveniens, courts usually apply a two-step process.  (*Stangvik, supra,* 54 Cal.3d at p. 751.)  In the first step, the court must determine whether the alternate forum is a suitable place for trial.  (*Ibid.*)

6

If it is, the next step is to decide whether the private and public interests, on balance, favor retaining the action in California. (*Ibid.*; see also *Animal Film, LLC v. D.E.J. Productions, Inc.* (2011) 193 Cal.App.4th 466, 473.) The motion is addressed to the trial court's discretion and the court retains a " 'flexible power' to consider and weigh all the factors." (*Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 198 (*Intershop*).) The moving party bears the burden of proof. (*Stangvik, supra,* at p. 751.)

A motion based on a forum selection clause, however, is a special type of forum non conveniens motion. (*Berg v. MTC Electronics Technologies Co.* (1998) 61 Cal.App.4th 349, 358.) Consistent with the modern trend, California favors enforcement of a forum selection clause appearing in a contract entered into freely and voluntarily by parties negotiating at arm's length. (*Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1679 (*Cal-State Business Products*).) When a case involves a mandatory forum selection clause, the traditional forum non conveniens analysis does not apply. (*Intershop, supra,* 104 Cal.App.4th at p. 198; *Cal-State Business Products, supra,* at pp. 1679, 1682-1683.) Instead, a mandatory forum selection clause is presumed valid and will be enforced unless enforcement of the clause would be unreasonable under the circumstances of the case. (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 496.) In contrast to a motion on traditional grounds of forum non conveniens, the burden of proof is on the party challenging enforcement of the forum selection clause. (*Intershop, supra,* at p. 198.)

Thus, the threshold question in the usual case involving a forum selection clause is whether the clause is mandatory or permissive.[3] (*Animal Film, supra,* 193 Cal.App.4th at

---

[3] A clause is mandatory if it requires the parties to litigate their disputes exclusively in the designated forum. (*Verdugo, supra,* 237 Cal.App.4th at p. 147, fn. 2.) A clause is

p. 471.)  If the clause is mandatory, it is presumed valid and will be enforced unless the party opposing the motion proves enforcement of the clause would be unreasonable.[4] (*Intershop, supra,* 104 Cal.App.4th at p. 198.)  If the clause is permissive, the traditional forum non conveniens analysis applies and the existence of the clause is merely one factor to be considered in determining whether the action should be heard in a different forum.  (*Animal Film, supra,* at p. 471.)

We will conclude, as the trial court did, that the forum selection clauses here are mandatory, not permissive.  Before reaching that issue, however, we will need to address an antecedent threshold issue; namely, whether LaCasse agreed to the Associate Agreement and USANA Policies at all.  As we explain in the next section, substantial evidence supports the trial court's determination that she did.

An order dismissing a complaint on the ground of forum non conveniens is reviewed for abuse of discretion.  (*Trident Labs, Inc. v. Merrill Lynch Commercial Finance Corp.* (2011) 200 Cal.App.4th 147, 154.)  If the order was based on any challenged findings of fact pertaining to the existence of a contract or mutual assent, the standard of review is substantial evidence.  (*Vita Planning & Landscape Architecture, Inc. v. HKS Architects, Inc.* (2015) 240 Cal.App.4th 763, 771-772 (*Vita Planning*).)  Under this standard, "we must uphold the trial court's finding if supported by substantial evidence."  (*Id.* at p. 772.)  Substantial evidence is evidence that is " ' " 'reasonable in nature, credible, and of solid value.' " ' "  (*Ibid.*)  " 'The ultimate determination is

_____

permissive if it merely requires the parties to submit to jurisdiction in the designated forum.  (*Ibid.*)

[4] "Unreasonable" in the context of mandatory forum selection clauses has been defined as meaning that the forum selected would be unavailable, unable to accomplish substantial justice, or that the choice of forum lacks a rational basis in light of the facts underlying the transaction.  (*Cal-State Business Products, supra,* 12 Cal.App.4th at p. 1679.)

whether a reasonable trier of fact could have found for the respondent based on the whole record.' " (*Ibid.*)

When no conflicting evidence has been presented, the interpretation of a forum selection clause is a legal question we review de novo. (*Animal Film, supra,* 193 Cal.App.4th at p. 471.) As with any other question of contract interpretation, whether a forum selection clause is mandatory or permissive is also a question of law reviewed de novo. (*Intershop, supra,* 104 Cal.App.4th at p. 196.) A mandatory forum selection clause will be enforced unless the plaintiff can show that such enforcement would be unreasonable. (*Id.* at p. 198.)

B.      *Evidence Establishing Existence of Agreements Containing Forum Selection*
        *Clauses*

As noted, a threshold question here is whether LaCasse agreed to the Associate Agreement and USANA Policies in the first place. LaCasse argues the evidence was not sufficient to show she assented to either agreement. She says the trial court should not have considered the Benedict Declaration, and none of USANA's evidence showed she signed or otherwise agreed to the Associate Agreement or USANA Policies. These arguments fall wide of the mark.

        *1.      The Benedict Declaration*

LaCasse begins by objecting to the trial court's consideration of the Benedict Declaration. She observes that the Benedict Declaration was submitted with USANA's reply brief and argues that evidence presented for the first time in reply should not be considered, unless good reason appears for the failure to present the evidence earlier. We reject this argument for several reasons. First, LaCasse's objections to the Benedict Declaration do not appear in our record.[5] That would be reason enough to reject the

---

[5] The record contains only USANA's response to LaCasse's apparent objection.

claim of error.  (*Rancho Santa Fe Assn. v. Dolan-King* (2004) 115 Cal.App.4th 28, 46 ["The party seeking to challenge an order on appeal has the burden to provide an adequate record to assess error"]; *Mountain Lion Coalition v. Fish & Game Com.* (1989) 214 Cal.App.3d 1043, 1051, fn. 9 ["if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed"].)

Second, LaCasse does not acknowledge the applicable standard of review (abuse of discretion) or explain how the trial court abused its discretion in considering the Benedict Declaration.  (*Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1009 [holding that trial court has discretion whether to "accept arguments or evidence made for the first time in reply"]; *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 241 ["Whether to accept new evidence with the reply papers is vested in the trial court's sound discretion, and we may reverse the trial court's decision only for a clear abuse of that discretion"]; *California Retail Portfolio Fund GMBH & Co. KG v. Hopkins Real Estate Group* (2011) 193 Cal.App.4th 849, 861 [trial court did not abuse its discretion by considering reply evidence].)  That, too, warrants rejection of her claim.  (*Sonic Mfg. Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465 ["Failure to acknowledge the proper scope of review is a concession of a lack of merit"].)

Third, LaCasse misses the point of *Golden Door Properties, LLC v. Superior Court* (2020) 53 Cal.App.5th 733 (*Golden Door*) and *Sprunk v. Prisma LLC* (2017) 14 Cal.App.5th 785 (*Sprunk*), on which USANA relied in submitting the Benedict Declaration.  LaCasse expends considerable energy distinguishing *Golden Door* and *Sprunk* on the facts, arguing, for example, that "neither case pertains to a contractual forum selection clause, nonetheless [*sic*] discusses one."  But the genuine significance of *Golden Door* and *Sprunk* is that both cases recognize an exception to the general rule against submitting new evidence with reply papers where the evidence is " 'strictly responsive' to arguments made for the first time in opposition."  (*Golden Door, supra,* at p. 774 [referee erred in excluding evidence responsive to an exhaustion of administrative

remedies defense raised for the first time in opposition papers]; see *Sprunk, supra,* at p. 794 [trial court properly admitted moving party's evidence submitted on reply because nonmoving party placed arbitration agreement's validity at issue in opposition papers].) LaCasse does not explain how the trial court abused its discretion in implicitly finding the Benedict Declaration was responsive to the points raised in the opposition. As such, LaCasse fails to demonstrate error.

Though nothing more needs to be said, we reiterate that the Benedict Declaration provides a detailed description of USANA's online processes for presenting the Associate Agreement and USANA Policies to enrollees and collecting electronic signatures. That evidence is responsive to LaCasse's argument, raised for the first time in opposition, that she did not assent to the Associate Agreement or USANA Policies. No abuse of discretion appears.

2. *Sufficiency of Evidence*

LaCasse next challenges the sufficiency of the evidence of assent. She argues the Whitney Declaration and Benedict Declaration were insufficient to show she actually received the Associate Agreement or USANA Policies, or agreed to their terms. Relying on *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836 (*Ruiz*) and *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047 (*Espejo*), LaCasse specifically argues the evidence was insufficient as a matter of law to authenticate the Associate Agreement or USANA Policies. We disagree.

"Every contract requires mutual assent or consent. (Civ. Code, §§ 1550, 1565), and ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms." (*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1049.) USANA had the initial burden of establishing the existence of an agreement containing a forum selection clause. (Cf. *Ruiz, supra,* 232 Cal.App.4th at p. 842 [general principles of contract law determine whether the parties have entered into a binding agreement to arbitrate, and the party

11

seeking arbitration bears the burden of proving the existence of an arbitration agreement]; *Espejo, supra,* 246 Cal.App.4th at p. 1060 [moving party has initial burden to show existence of agreement to arbitrate]; see also *Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.* (E.D. Cal. 2014) 60 F.Supp.3d 1109, 1115-1117 [party seeking to enforce forum selection clause bears burden of demonstrating existence of contract containing such clause].)

USANA attempted to carry that burden by relying on the Associate Agreement, which was said to have been electronically signed by LaCasse. "Under Civil Code section 1633.7, enacted in 1999 as part of the Uniform Electronic Transactions Act (Civ. Code, § 1633.1 et seq., added by Stats. 1999, ch. 428, § 1, pp. 2809-2816), an electronic signature has the same legal effect as a handwritten signature (Civ. Code, § 1633.7, subd. (a) ['A . . . signature may not be denied legal effect or enforceability solely because it is in electronic form[]'])." (*Ruiz, supra,* 232 Cal.App.4th at p. 843.) "Still, any writing must be authenticated before the writing, or secondary evidence of its content, may be received in evidence." (*Ibid.*) " 'Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law.' " (*Ibid.*, quoting Evid. Code § 1400, italics omitted.) "An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." (Civ. Code, § 1633.9, subd. (a).)

The Whitney Declaration avers that LaCasse submitted an electronic signature "through USANA's online registration portal on August 13, 2015[,] at 12:58 PM to indicate her agreement to the Associate Agreement." The Whitney Declaration attaches an unsigned copy of the Associate Agreement and an electronic signature page bearing

12

LaCasse's name. The signature page indicates that an unspecified document was "SIGNED ON" August 13, 2015, at 12:58 PM.

LaCasse makes much of the fact that the Associate Agreement does not bear her signature, and the signature page does not specify the agreement said to have been signed. However, the Benedict Declaration clarifies that the online registration portal asks enrollees to submit electronic signatures indicating their agreement to the Associate Agreement and USANA Policies. Specifically, the Benedict Declaration explains that enrollees initially access the portal with the help of a "[s]ponsor." After the enrollment process is complete, the enrollee and sponsor are shown a dialog box asking whether the enrollee would like to submit an electronic signature manifesting his or her assent to the Associate Agreement and USANA Policies. The enrollee can either click a button saying, "I agree," or another button saying, "I'll Sign Later."

According to the Benedict Declaration, LaCasse began the enrollment process on August 10, 2015, and exercised the option to sign later. She returned to the online registration portal on August 13, 2015, using a previously assigned unique user ID and secure password. She was then shown a dialog box reminding her to sign the Associate Agreement and affirming that she agreed with various terms and conditions, including those set forth in the Associate Agreement and USANA Policies. According to the Benedict Declaration, LaCasse typed her name and clicked the "I agree" button, thereby generating the timestamp shown on the electronic signature page.

The trial court found the Whitney and Benedict Declarations were sufficient to show that LaCasse was presented with copies of the Associate Agreement and USANA Policies, electronically signed the Associate Agreement on August 13, 2015, and had full access to both documents before and after signing. The trial court found further support for these findings in LaCasse's allegations that she was employed by USANA from August 2015 to January 2017, and USANA's evidence that LaCasse could not have

13

become an employee or independent contractor without logging onto the online portal using her own user ID and secure password.

Substantial evidence supports the trial court's findings, and LaCasse does not seriously contend otherwise. (See *Vita, supra,* 240 Cal.App.4th at p. 772 ["Substantial evidence is evidence of ' " 'ponderable legal significance,' " ' ' " 'reasonable in nature, credible, and of solid value . . .' " ' "].) These findings, in turn, support the conclusion that LaCasse assented to the Associate Agreement and USANA Policies. (*Ibid.* [" 'Mutual assent or consent is necessary to the formation of a contract' and '[m]utual assent is a question of fact' "]; see also *Russell v. Union Oil Co.* (1970) 7 Cal.App.3d 110, 114 ["The determination whether [mutual assent] is present is made by the use of an objective test, the manifestations or expressions of assent being controlling. [Citation.] 'Mutual assent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding' "].)

LaCasse argues *Ruiz* and *Espejo* compel a different conclusion. Neither case advances her cause. In *Ruiz*, an employer (Moss) sought to compel arbitration based on an initial declaration that "summarily asserted" the employee (Ruiz) electronically signed an arbitration agreement " 'on or about September 21, 2011.' " (*Ruiz, supra,* 232 Cal.App.4th at p. 843.) Ruiz opposed the petition to compel arbitration, arguing the " 'conclusory' " assertion that he signed the arbitration agreement was not enough to prove by a preponderance of the evidence that he did, in fact, sign the agreement. (*Id.* at p. 840) In an opposing declaration, Ruiz averred that he did not recall signing any arbitration agreement on September 21, 2011, or at any other time, and if he had been presented with such an agreement, he would not have signed it. (*Ibid.*) Moss filed reply papers indicating all employees were required to sign the arbitration agreement, and explaining that they were required to log into the company's "HR system," review and sign forms. (*Id.* at pp. 840-841.) However, Moss did not explain how it determined Ruiz

14

was the person who electronically signed. (*Id.* at p. 841.) This, the court said, "left a critical gap in the evidence supporting the petition." (*Id.* at p. 844.)

Accordingly, the court concluded: "In the face of Ruiz's failure to recall electronically signing the 2011 agreement, the fact the 2011 agreement had an electronic signature on it in the name of Ruiz, and a date and time stamp for the signature, was insufficient to support a finding that the electronic signature was, in fact 'the act of' Ruiz. (Civ. Code, § 1633.9, subd. (a).) For the same reason, the evidence was insufficient to support a finding that the electronic signature was what Moss . . . claimed it was: the electronic signature of Ruiz. (Evid. Code, § 1400, item (a).) This was not a difficult evidentiary burden to meet, but it was not met here." (*Ruiz, supra,* 232 Cal.App.4th at p. 844.)

In *Espejo*, the Court of Appeal reversed the trial court's ruling denying the employer's petition to compel arbitration. (*Espejo, supra,* 246 Cal.App.4th at pp. 1050-1051.) The trial court found the defendants failed to establish there was an enforceable arbitration agreement. (*Ibid.*) The Court of Appeal disagreed, noting that a supplemental declaration by the employer's systems consultant "offered the critical factual connection that the declarations in *Ruiz* lacked." (*Id.* at p. 1062.) The court explained: "[The systems consultant] detailed [the employer's] security precautions regarding transmission and use of an applicant's unique username and password, as well as the steps an applicant would have to take to place his or her name on the signature line of the employment agreement and the [arbitration agreement]. Based on this procedure, she concluded that the 'name Jay Baniaga Espejo could only have been placed on the signature pages of the employment agreement and the [arbitration agreement] by someone using Dr. Espejo's unique user name and password.' " (*Ibid.*) Despite the employee's assertion that he "did not recall ever signing" the arbitration agreement (*id.* at p. 1054), the *Espejo* court held the details in the systems consultant's declaration "satisfactorily meet the requirements articulated in *Ruiz* and establish that the electronic signature on [the arbitration

15

agreement] was 'the act of' Espejo." (*Id.* at p. 1062.) Thus, the declaration "provide[d] the necessary factual details to properly authenticate the document." (*Ibid.*)

We believe USANA's evidentiary showing is more like that found sufficient in *Espejo* than that found insufficient in *Ruiz*. We need not decide this question, however, as both cases are distinguishable. Unlike the plaintiffs in *Ruiz* and *Espejo*, LaCasse offered no evidence that the Associate Agreement was not signed by her, or not signed at all. (*Ruiz, supra,* 232 Cal.App.4th at p. 840; *Espejo, supra,* 246 Cal.App.4th at p. 1054.) Although LaCasse hypothesizes that "someone else could have used [her] account by simply entering the username and password," nothing suggests anything like this actually happened. To the contrary, LaCasse's own allegations confirm that she began work as an associate in August 2015, around the time that someone using her unique user ID and secure password accessed the online registration portal and affixed an electronic signature to the Associate Agreement. On the record before us, where USANA offered detailed evidence and LaCasse offered none, we conclude substantial evidence supports the trial court's finding that the electronic signature affixed to the Associate Agreement was "the act of" LaCasse by a preponderance of the evidence.

3. *Incorporation by Reference*

LaCasse next challenges the trial court's determination that she agreed to the USANA Policies. She observes the Whitney and Benedict Declarations address the electronic signing of the Associate Agreement, but do not assert that she received or electronically signed the USANA Policies. She acknowledges the trial court found the Associate Agreement incorporates the USANA Policies by reference, but argues the incorporation by reference was ineffective. We disagree.

" ' "For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting

16

parties." ' [Citations.] [¶] The contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.' " (*Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 54.)

The Associate Agreement clearly and unequivocally incorporates the USANA Policies. The Associate Agreement provides: "APPLICANT has read and agrees to be bound by the terms of this agreement, the USANA Compensation Plan and the Policies & Procedures [i.e., the USANA Policies], all of which are incorporated herein by reference and made a part hereof for all purposes." The Benedict Declaration establishes that the USANA Policies were known or easily available to LaCasse, inasmuch as she was given "multiple opportunities" to review, download, and print copies of the USANA Policies during the enrollment process, and was asked to confirm that she had read and understood them prior to signing the Associate Agreement. We conclude the USANA Policies were effectively incorporated into the Associate Agreement, to which LaCasse assented.

## C.    *Mandatory or Permissive*

LaCasse argues the trial court erred in concluding the forum selection clause in the Associate Agreement was mandatory, rather than permissive. As we have explained, a threshold issue in the usual case involving a forum selection clause is whether the clause is mandatory or permissive. (*Animal Film, supra,* 193 Cal.App.4th at p. 471; see also *Verdugo, supra,* 237 Cal.App.4th at p. 147, fn. 2 ["A clause is mandatory if it requires the parties to litigate their disputes exclusively in the designated forum, and it is permissive if it merely requires the parties to submit to jurisdiction in the designated forum"].) We are inclined to agree with the trial court that the forum selection clause in the Associate Agreement was mandatory. [See, e.g., *Korman v. Princess Cruise Lines, Ltd.* (2019) 32 Cal.App.5th 206, 215-216 ["a phrase such as 'shall be litigated' generally has been construed to indicate that the forum selection clause is mandatory"].) We need not decide this question, however, as LaCasse concedes the forum selection clause in the

17

USANA Policies was mandatory, and we have already concluded the Associate Agreement incorporates the USANA Policies by reference.  It follows that LaCasse's cause of action was subject to a mandatory forum selection clause, which is presumed valid.  (*Intershop, supra,* 104 Cal.App.4th at p. 198.)

D.      *Unwaivable Rights*

LaCasse next challenges the trial court's conclusion that the complaint's single cause of action for violations of the UCL was not based on unwaivable California rights. She argues the UCL cause of action sought to vindicate unwaivable rights under the Labor Code, and therefore, USANA had the burden to show that litigating the cause of action in Utah would not diminish her substantive rights under California law.  Again, we disagree.

"A mandatory forum selection clause . . . is generally given effect unless enforcement would be unreasonable or unfair, and the party opposing enforcement of the clause ordinarily bears the burden of proving why it should not be enforced."  (*Handoush v. Lease Finance Group, LLC* (2019) 41 Cal.App.5th 729, 734; see also *Verdugo, supra,* 237 Cal.App.4th at p. 147 [under the general rule, the party opposing enforcement of a forum selection clause " 'bears the "substantial" burden of proving why it should *not* be enforced' "].)  That burden is reversed, however, "when the claims at issue are based on unwaivable rights created by California statutes.  In that situation, the party seeking to enforce the forum selection clause bears the burden to show litigating the claims in the contractually designated forum 'will not diminish in any way the substantive rights afforded . . . under California law.' "  (*Verdugo, supra,* at p. 147.)

We are not persuaded that LaCasse meets the exception established by *Verdugo.* There, the employee (Verdugo) asserted causes of action for wage and hour violations under the Labor Code (Lab. Code, §§ 200-204, 226, 226.7, 227.3, and 1194), violations of the UCL, and civil penalties under the Private Attorney General Act of 2004 (Lab. Code, § 2698; PAGA).  (*Verdugo, supra,* 237 Cal.App.4th at p. 146.)  The employer

18

moved to dismiss or stay the action based on a forum selection clause designating the State of Texas as "the sole venue" for disputes arising out of the parties' employment agreement. (*Ibid.*) Verdugo argued her claims were based on unwaivable statutory rights, and the Court of Appeal agreed, noting Labor Code section 219, subdivision (a) prohibits waiver of rights granted under the Labor Code through private agreement. (*Verdugo, supra,* at pp. 149-150; Lab. Code, § 219, subd. (a) ["no provision of this article can in any way be contravened or set aside by a private agreement, whether written, oral, or implied"]; see also *Iskanian v. CLS Transportation Los Angeles* (2014) 59 Cal.4th 348, 383, overruled in part in *Viking River Cruises, Inc. v. Moriana* (2022) __ U.S. __, 142 S.Ct. 1906, 213 L.Ed.2d 179 [holding that an "employee's right to bring a PAGA action is unwaivable"].)

LaCasse emphasizes that Verdugo asserted a cause of action under the UCL, which was predicated on the same statutory rights as her causes of action for wage and hour violations. That much is true, but LaCasse reads too much into the court's brief and undifferentiated discussion of Verdugo's UCL cause of action. Although *Verdugo* generally asserts that "all of Verdugo's claims are based on her statutory rights under the Labor Code," the opinion does not purport to announce a general rule that UCL causes of action are unwaivable to the same extent as their predicates. (*Verdugo, supra,* 237 Cal.App.4th at p. 150; see also *Cortez v. Purolator Air Filtration Prods. Co.* (2000) 23 Cal.4th 163, 179 ["A UCL action is independent of a statutory claim for back wages"].) The *Verdugo* court had no occasion to consider that question, as most of Verdugo's causes of action were based on unwaivable Labor Code rights. (Cf. *Handoush v. Lease Finance Group, LLC* (2019) 41 Cal.App.5th 729, 734, fn. 3 [noting that, unlike the statutes primarily at issue in *Verdugo*, "the UCL does not contain an antiwaiver provision"].) Consequently, we do not read *Verdugo* as standing for the proposition that UCL causes of action based on violations of unwaivable statutory rights (e.g., violations of the Labor Code) are themselves unwaivable. (*People v. Ault* (2004) 33 Cal.4th 1250,

1268, fn. 10 ["It is axiomatic that cases are not authority for propositions not considered"].) Nothing in *Verdugo* compels the conclusion that LaCasse's UCL cause of action was based on unwaivable statutory rights, such that the burden shifted to USANA to show the contractually designated Utah forum would not diminish them.

LaCasse next argues the trial court misapplied *Ryze*. In *Ryze*, an employee (Nedd) sued his former employer (Ryze) for wrongful termination, asserting causes of action under the Fair Employment and Housing Act (Government Code section 12900 et seq.; FEHA). (*Ryze, supra,* 33 Cal.App.5th at p. 1068.) Ryze moved to stay or dismiss the action based on a forum selection clause designating Indiana as the forum for disputes relating to Nedd's employment agreement. (*Ibid.*) The trial court denied the motion, stating the forum selection clause was contrary to California public policy as expressed in Labor Code section 925 and Government Code section 12965. (*Ryze, supra,* at p. 1069.) Ryze sought a peremptory writ of mandate directing the trial court to grant the motion to dismiss or stay, and the Court of Appeal issued the writ. (*Ibid.*)

The *Ryze* court explained that the forum selection clause was not unenforceable due to any statement of public policy in FEHA. (*Ryze, supra,* 33 Cal.App.5th at p. 1071.) The court then considered Labor Code section 925 (*Ryze, supra,* at p. 1071), which provides: "An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would . . . : [¶] (1) Require the employee to adjudicate outside of California a claim arising in California. (Lab. Code, § 925, subd. (a).) The *Ryze* court emphasized that: "The statute also expressly states: 'This section shall not apply to a contract entered into, modified or extended on or after January 1, 2017.' (Lab. Code, § 925, subd. (f).)" (*Ryze, supra,* at p. 1071.)

The *Ryze* court explained that the trial court properly recognized that the provisions of Labor Code section 925 " 'do not directly apply' " to Nedd's employment agreement, which was neither modified nor extended after the statute's effective date.

20

(*Ryze, supra,* 33 Cal.App.5th at p. 1072.)  Nevertheless, the trial court found that the provisions of Labor Code section 925 " 'provide insight into our state's policy aimed at prohibiting employers from requiring that California residents and workers agree to litigate their claims in a different forum as a prerequisite to employment.' " (*Ryze, supra,* at p. 1072.)  This was error, the *Ryze* court said, because the trial court's decision to rely upon the public policy underlying Labor Code section 925 in construing an employment agreement "which was not entered into, modified, or extended on or after January 1, 2017, effectively circumvented the Legislature's express intent that the statute not be applied to an earlier agreement or extension." (*Ryze, supra,* at p. 1072.)

The trial court here initially believed that the forum selection clause was unenforceable because LaCasse's UCL cause of action was predicated upon "unwaivable California Labor Code rights, which are the subject of keen California public policy protection as demonstrated by the enactment of Labor Code section 925 and *Verdugo.*" Following argument, the trial court properly concluded that "*Ryze's* analysis essentially forecloses that rationale, and instead holds that: (1) if Labor Code section 925 does not apply to the parties' contract, it cannot be looked to as a statement of public policy disfavoring contractual forum selection agreements that send an employee's California Labor Code claims out of state; and (2) if a statutory scheme does not include an express anti-waiver provision, then public policy cannot inject into that scheme an implied anti-waiver protection that the Legislature did not expressly include." The trial court's revised reasoning was correct.

E.      *Labor Code Section 925*

Finally, LaCasse argues the trial court erred in finding Labor Code section 925 to apply "to a contract entered into, modified, or extended on or after January 1, 2017." (Lab. Code, § 925, subd. (f).)  Nothing in the record suggests the Associate Agreement or (any other agreement) was entered into, modified, or extended on or after January 1, 2017.  To the contrary, the evidence in the record indicates the Associate Agreement and

21

related agreements were entered in 2015, before Labor Code section 925's effective date. And, though the USANA may have had the ability to unilaterally modify the Associate Agreement and USANA Policies, nothing suggests it did so after January 1, 2017. Contrary to LaCasse's unsupported contention, USANA did not have the burden to show that the Associate Agreement was not modified after January 1, 2017. Rather, it was LaCasse's burden to show that the causes of action at issue were based on unwaivable statutory rights. (*Verdugo, supra,* 237 Cal.App.4th at p. 149.) This she failed to do.

### III. DISPOSITION

The judgment is affirmed. USANA shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

RENNER, Acting P. J.

We concur:

/S/

EARL, J.

/S/

HOCH, J.*

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.